UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

        Plaintiff,

vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
MICHIGAN HERITAGE BANK; and
TIMOTHY J. CUTTLE,

        Defendants.

Case No. 11-14816-BAF-MKM
District Judge Bernard A. Friedman
Magistrate Judge Mona K. Majzoub

## JOINT STATEMENT OF RESOLVED AND UNRESOLVED ISSUES REGARDING THE FDIC-R'S MOTION TO COMPEL

Plaintiff Progressive Casualty Insurance Company ("Progressive") and Defendant Federal Deposit Insurance Corporation, as Receiver for Michigan Heritage Bank ("FDIC-R") submit the following Joint Statement pursuant to this Court's October 18, 2013 Order (Docket No. 54) relating to the Motion to Compel filed by the FDIC-R (Docket No. 48).

Prior to the filing of the FDIC-R's motion, counsel for Progressive and the FDIC-R had exchanged extensive communications regarding the issues in dispute and conducted multiple joint telephone conferences in further attempt to narrow the issues in dispute. Despite these efforts, there remain several unresolved issues relating to whether the FDIC-R is entitled to certain documents in Progressive's possession. The FDIC-R certifies that it has conferred in good faith with Progressive in an effort to narrow areas of disagreement.

## 1. WHETHER THE FDIC-R IS ENTITLED TO COMMUNICATIONS BETWEEN PROGRESSIVE AND INSURANCE BROKERS.

### A. The FDIC-R's Position:

The FDIC-R's initial discovery request sought all documents relating to communications between Progressive and any agent or broker regarding the scope of coverage under any Progressive director and officer liability insurance policy. (Docket No. 48, p. 11). The FDIC-R has subsequently agreed to limit its request to just those communications regarding the two defenses Progressive has asserted (the insured v. insured exclusion and the unpaid loan carve-out) and the type of claim at issue (i.e., a tort claim relating to lending).

The scope of discovery under the Federal Rules of Civil Procedure is "traditionally quite broad." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). In this case, the Court has already authorized discovery of several topics, including the insured v. insured exclusion and the unpaid loan carve out. (Docket No. 33, pp. 5-6). The Court did not limit discovery to just documents and communications relating to Michigan Heritage. Rather, it allowed for broad discovery into the ambiguity of the two policy provisions at issue.

Progressive's position that it is too burdensome to search for and produce the documents requested by the FDIC-R has already been rejected by a court in another declaratory action filed by Progressive ("*Silver State*"), and that court chastised Progressive for its misleading representations regarding the actual burden involved. (Docket No. 56, p.

10294727.1 04649/148745

3). The Court should similarly reject Progressive's attempt to avoid its discovery obligations and order production of the broker communications sought by the FDIC-R.

### B. Progressive's Position:

The FDIC-R's request for broker communications involving any insured spanning a nine and a-half year period is clearly overbroad and unduly burdensome. Contrary to the FDIC-R's contention, the District Court's earlier summary judgment ruling permitting discovery to go forward does not afford the FDIC-R carte blanche discovery into Progressive's files without limitation. The usual reasonableness constraints embodied in Fed. R. Civ. P. 26(b)(2)(C) still apply. Likewise, the FDIC's attempt to bootstrap its unreasonable discovery requests by reference to a ruling in another case involving the FDIC and Progressive, *Silver State*, should not shield the FDIC-Rs unreasonable requests here from scrutiny.

As an initial matter, the FDIC-R misstates what was ordered in *Silver State*. The *Silver State* court did not require Progressive to review all 3,500+ underwriting files for the D&O policies issued since January 2004 or to produce communications with any broker for any insured that happens to relate to the coverage issues that are relevant to this action. Instead, the *Silver State* court ordered Progressive to review a discrete set of documents related to the 526 claims involving D&O policies opened since January 1, 2004, *that resulted in payment by Progressive*. (Dkt. No. 56, Ex. B at 8). By comparison, the only purported limitation the FDIC-R offers here is to limit it to communications relating to tort liability related to lending, the IvI Exclusion, and the definition of "Loss." This purported

3.

compromise lacks any substance and would still require a review of all of the same files as would be necessary without the FDIC-R's "narrowed" request. At bottom, any minimal relevance that the documents sought by the FDIC-R may have are substantially outweighed by the inordinate burden the requests place upon Progressive.

Importantly, the ruling in the *Silver State* case that the FDIC-R so eagerly cites in its reply and again here was decided after Progressive filed its opposition to the FDIC-R's motion to compel herein. Thus, Progressive has not had a chance to address it. Progressive wishes to be heard on the topic and anticipates that it will seek leave to file a surreply to do so. In brief, Progressive takes its discovery responsibilities extremely seriously and asks only that its objections herein be addressed on their merits and not by innuendo as the FDIC-R seemingly prefers.

**2.    WHETHER THE FDIC-R IS ENTITLED TO DOCUMENTS RELATING TO OTHER PROGRESSIVE POLICYHOLDERS.**

**A.    <u>The FDIC-R's Position:</u>**

As stated above, the Court authorized broad discovery into the insured v. insured and unpaid loan carve out defenses asserted by Progressive in this litigation. Numerous courts have ruled that in the context of insurance policy interpretation disputes, documents relating to other policyholders involving the same policy provisions are relevant and discoverable. (Docket No. 48, pp. 18-19).

Progressive's response (once again) is that searching for and producing such documents would impose an undue burden. As set forth in the FDIC-R's reply brief, the

FDIC-R has agreed to narrow its request for the 2,700 claim files identified by Progressive to just the "Progress Documents," as that term was defined in *Silver State*. (Docket No. 56, pp. 4-5). The *Silver State* Court already rejected Progressive's similar undue burden argument, and ordered Progressive to produce the Progress Documents for the claim files at issue in that case. The Court should similarly reject Progressive's disingenuous burden argument and order it to produce the Progress Documents for the 2,700 claim files identified by Progressive.

    B.  **Progressive's Position:**

As numerous courts have recognized, a review of other claims involving other insureds is not relevant to the proper application of the terms actually at issue in the case at bar, and, as here, any potential relevance is substantially outweighed by the burden such a search would require. (Dkt. No. 55 at 10–11 & n.5). As discussed in Progressive's opposition, even limiting the FDIC-R's request to those claims that have been opened since January 2004, the FDIC-R's requests would require Progressive to review information contained in approximately 3,200 claim files. (*Id.* at 12). Such an undertaking would be extremely time consuming and costly.

Notwithstanding, the FDIC-R asserts that this Court should follow the *Silver State* court's initial lead, but require Progressive to go even further. Specifically, the FDIC-R argues that Progressive should be required to review not just documents related to the 526 claims for which a payment was made, but also the other approximately 2,700 claims opened since January 2004. The FDIC-R makes this request regardless of the fact that the vast

5.

majority of these claims would not even involve the policy provisions at issue in this declaratory judgment action. Progressive should not be required to sift through documents related to thousands of claims involving insureds under other policies just so the FDIC-R can attempt to find the proverbial needle in a haystack.

### 3. WHETHER THE FDIC-R IS ENTITLED TO PROGRESSIVE'S CLAIM MANUALS AND INSTRUCTIONAL MATERIALS.

#### A. The FDIC-R's Position:

The Court specifically permitted discovery of the policy provisions' "underwriting history" and "interpretation and construction." (Docket No. 33, at 5-6, citing Ruane Declaration). Progressive's claims manuals and instructional materials will provide relevant evidence of Progressive's construction and interpretation of the policy provisions at issue. Discovery of this information will provide the FDIC-R with the types of reports and documents created in the underwriting and claims handling processes. The documents may also contain information related to Progressive's course of dealing or insurance industry practice.

#### B. Progressive's Position:

The claims manuals and instructional materials that the FDIC-R seeks in Document Requests 10 and 11 are not relevant to the parties' claims and defenses in this action. As an initial matter, this case does not involve alleged bad faith on the part of Progressive in its handling of the FDIC's underlying lawsuit against Mr. Cuttle. As such, manuals addressing how claims are to be handled are not instructive as to the coverage questions presented here.

Moreover, as confirmed in Mr. Cawley's declaration accompanying Progressive's opposition, Progressive's claims manuals do not address the construction and interpretation of the policy provisions at issue in this action, i.e., the IvI Exclusion and the Loan Loss Carve-Out.  Finally, while the FDIC is quick to rely on the recent *Silver State* ruling when it plays to its benefit, it fails to recognize that the FDIC withdrew its request for precisely these types of materials in that action.

    **4.**    **WHETHER THE FDIC-R IS ENTITLED TO REINSURANCE DOCUMENTS.**

        **A.**    <u>**The FDIC-R's Position:**</u>

Progressive's communications with its reinsurers will provide direct insight into what Progressive believes to be a covered claim.  In fact, Progressive has already admitted that it communicated its own interpretation of the policy provisions and coverage analysis at issue to its reinsurers.  (Docket No. 56, Exhibit B, p. 12).  Courts routinely hold that reinsurance information is relevant and discoverable.  (Docket No. 48, pp. 21-22).  In fact, the *Silver State* Court recently ruled that reinsurance documents are relevant to the issue of policy coverage and interpretation of Progressive's insured v. insured and loan loss carve out defenses.  (Docket No. 56, Exhibit B, pp. 13-14).  The *Silver State* Court also rejected Progressive's argument that all of its communications with its reinsurers are somehow entitled to a blanket attorney-client and/or work product privilege.  (Docket No. 56, Exhibit B, p. 15).

### B. Progressive's Position:

The FDIC-R's request for communications with Progressive's reinsurers regarding the FDIC-R's claim against Mr. Cuttle should be denied because such materials are irrelevant to the coverage issues presented in this case and involve protected communications. While the FDIC asserts that courts routinely find such information discoverable, numerous courts, including this Court, have, in fact, found just the opposite. *See United States Fire Ins. Co. v. City of Warren*, No. 2:10-cv-13128, 2012 U.S. Dist. LEXIS 58353, at *31 (E.D. Mich. Apr. 26, 2012); *see also* Dkt. No. 55 at 18 & n.13. Moreover, the *Silver State* court's ruling on this issue should not be followed for at least two reasons. First, while recognizing that reinsurance information is generally not relevant, the court determined that it was instructive in that case because the case involved "an unsettled area of the law involving interpretation of D&O policy provisions issued to financial institutions." (Dkt. No. 56, Ex. B at 13-14). In fact, there are numerous cases addressing versions of the IvI Exclusion in both the failed bank and bankruptcy context, and case law that is instructive with respect to the Loan Loss Carve-Out. *See* Dkt. No. 18 at 7–13. Second, the *Silver State* court's decision to permit the discovery was based, in part, on the specifics of that case. One of Progressive's coverage defenses in *Silver State* is that the FDIC's claim was untimely, and the court noted that communications with reinsurers might provide information as to "when Progressive received notice of certain of the officers, directors, and employees' claims," and, "if the policy holders' claims were untimely, whether Progressive claimed it was prejudiced by the failure

8.

to provide timely notice." (Dkt. No. 56, Ex. B at 14). Those same reasons for permitting discovery are not at issue here.

Additionally, as detailed in Progressive's opposition, counsel has been involved with the handling of the FDIC's claim from early on, and requiring production of communications with reinsurers concerning the FDIC-R's lawsuit against Mr. Cuttle would invade the attorney-client privilege and work-product doctrine. Further, to the extent that communications with reinsurers do not involve privileged communications, but instead involve business decisions, such communications are not relevant. *See, e.g., Flintkote Co. v. Gen. Acc. Assur. Co. of Can.*, No. C 04-1827, 2009 WL 1457974, at *5 (N.D. Cal. May 26, 2009) (recognizing that, "[g]enerally, courts have chosen to deny discovery of reinsurance because it was irrelevant and based solely on business considerations").

### 5. WHETHER THE FDIC-R IS ENTITLED TO RESERVE DOCUMENTS.

#### A. The FDIC-R's Position:

Documents relating to Progressive's reserves for the FDIC-R's action against Mr. Cuttle are probative of Progressive's assessment of the claims against Mr. Cuttle and Progressive's possible liability under the D&O policies. Information that may expose a contradiction between Progressive's current stated position on coverage and how it actually believed the coverage at issue applied cannot be shielded from view simply because it is associated with setting a reserve. Numerous courts have ordered the production of such documents, finding that reserve information is relevant because, among other reasons, it

"could show evidence of [the insurers'] initial evaluation of the sufficiency of the [insured's] proof of loss." (Docket No. 48, pp. 28-29).

The Court should also reject Progressive's claim that the documents requested are somehow protected from disclosure by the attorney-client and/or work product privileges. First, these documents reflect the ordinary business of claims determination. Moreover, Progressive's failure to produce a log for these documents defeats any claim of privilege.

### B. Progressive's Position:

Documents relating to any reserve set for the FDIC's claim against Mr. Cuttle are not relevant to the coverage issues presented in this declaratory judgment action. Cases from both within and outside of this jurisdiction have determined that reserve information does not have any bearing on the legal question of coverage. *See Olivia Marie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 11-12394, 2011 WL 6739400, at *3 (E.D. Mich. Dec. 22, 2011); *City of Warren*, 2012 U.S. Dist. LEXIS 58353, at *30; *see also* Dkt. No. 55 at 24 n.16. Further, determinations regarding the setting of a reserve for this matter are appropriately protected from disclosure as privileged. *See* Dkt. No. 55 at 24–25 & n.17.

10294727.1 04649/148745

Respectfully submitted this 19th day of November, 2013.

/s/ Charles W. Chotvacs (w/ permission)
Lewis K. Loss
Matthew J. Dendinger
Charles W. Chotvacs
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, N.W., Suite 450
Washington, D.C.  20036
Telephone: (202) 778-4078
Facsimile: (202) 778-4099
lloss@ljwllp.com
mdendinger@ljwllp.com
cchotvacs@ljwllp.com

    -and-

Thomas H. Howlett
THE GOOGASIAN FIRM, P.C.
6895 Telegraph Road
Bloomfield Hills, MI  48301
Telephone: (248) 540-3333
Facsimile: (248) 540-7213
thowlett@googasian.com

*Counsel for Plaintiff*
*Progressive Casualty Insurance Company*

/s/ David A. Breuch
Edward J. Hood
David A. Breuch
CLARK HILL PLC
500 Woodward Avenue, Ste. 3500
Detroit, MI 48226-3435
Telephone: (313) 965-8300
Facsimile: (313) 965-8252
ehood@clarkhill.com
dbreuch@clarkhill.com

*Counsel for Defendant Federal Deposit Insurance Corporation as Receiver for Michigan Heritage Bank*

11.

10294727.1 04649/148745

## CERTIFICATE OF SERVICE

      I hereby certify that on November 19, 2013, I electronically filed with the Clerk of Court the Joint Statement Of Resolved And Unresolved Issues Regarding The Fdic-R's Motion To Compel using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

                                          Respectfully submitted,

                                         /s/  David A. Breuch
                                       David A. Breuch (P45368)
                                       Jonathan R. Schulz (P70927)
                                       Clark Hill PLC
                                       500 Woodward Avenue, Ste. 3500
                                       Detroit, MI 48226-3435
                                       Telephone: (313) 965-8300
                                       dbreuch@clarkhill.com
                                       jschulz@clarkhill.com